# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| KATHARINE WILKINSON and BRIAN WILKINSON, | |
| Plaintiffs, | No. C03-0022 |
| vs. | **ORDER** |
| JIM MILLER NISSAN, INC., d/b/a Jim Miller Nissan-Subaru, | |
| Defendant. | |

_____

This matter comes before the court pursuant to the defendant's April 4, 2005 motion for summary judgment (docket number 27). The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) (docket number 14). For the reasons set forth below, the defendant's motion for summary judgment is granted.

## FACTUAL AND PROCEDURAL BACKGROUND

The plaintiffs in this matter, Katharine and Brian Wilkinson, along with their infant son Robby, were involved in a single vehicle accident on September 30, 2001. When the accident occurred Plaintiff Brian Wilkinson was driving eastbound on Highway 30 in his Isuzu Rodeo sport utility vehicle in which his wife, Plaintiff Katharine Wilkinson, and Robby Wilkinson were passengers. The plaintiffs had been following a semi tractor-trailer for approximately ten miles before the accident occurred. The plaintiffs were following the semi at a distance of about a football field. Suddenly, the plaintiffs identified what appeared to be a large, black object flying through the air toward their front windshield.

1

Plaintiff Brian Wilkinson described the object as being like a "black type of bumper."[1] He thought that the object was a heavy metal object, heavy enough to penetrate the windshield and harm both he and Plaintiff Katharine Wilkinson. Plaintiff Katharine Wilkinson described the object as a "huge black thing" that was coming at their windshield.[2] She thought that the object was about the size of their windshield.

Plaintiff Brian Wilkinson's first reaction to the approaching object was to swerve his vehicle to the right, in an attempt to avoid the object hitting the windshield. He then swerved back to the left as he was trying to keep out of the ditch on the right. Upon swerving back to the left, Plaintiff Brian Wilkinson lost control of the vehicle and it began to roll. Shortly after the accident, bystanders and medical personnel began to arrive on scene. Plaintiff Brian Wilkinson and Robby Wilkinson were transported to the hospital by ambulance. While Plaintiff Brian Wilkinson was waiting in the ambulance, medical personnel told him that he should remain in the ambulance, thus preventing him from examining the accident scene. As a result, Plaintiff Brian Wilkinson did no further investigation of what the object was that had caused him to swerve, and never subsequently had the opportunity to look for the object.

Iowa State Trooper Matt Schwenn arrived on scene to investigate the accident. When Trooper Schwenn arrived on scene, he did not see anything on the roadway that attracted his attention. Trooper Schwenn spoke briefly with Plaintiff Brian Wilkinson about the accident and the events leading up to the accident. Trooper Schwenn began to look for the object. Plaintiff Katharine Wilkinson was removed from the vehicle and transported by air ambulance to the hospital. At some point, Dale and Gale Nordby approached Trooper Schwenn at the accident scene carrying a portion of their bug shield and told Trooper Schwenn that it had come loose immediately after they had passed one,

---

[1] See Deposition of Brian Wilkinson.

[2] See Deposition of Katharine Wilkinson.

or possibly two semi trucks while driving on Highway 30 in their 2002 Subaru Outback vehicle.

Following the accident, Gail Nordby took the Nordby vehicle to the defendant to have the remaining pieces of the bug shield removed. The defendant did not offer Ms. Nordby a replacement bug shield. One of the defendant's service persons, Kenneth Graham, stated that he did not offer the Nordby's a replacement bug shield because Gail Nordby did not ask for a replacement, and because replacing the bug shield would "not have been wise . . . because [the dealership had] seen this happen on other vehicles."[3] In his deposition testimony, Mr. Graham estimated that he had observed other damaged bug shields on five or six other occasions. The defendant did not instruct its sales personnel to warn new vehicle owners that there was a risk that the bug shield could separate "in certain conditions such as meeting a semi on a two-lane highway."[4] The defendant's practice in regard to the broken bug shields, prior to Gail Nordby's visit to have the remainder of the Nordby broken bug shield removed, was to replace the bug shield.

Mr. Graham notified the defendant that he had been made aware of several instances of bug shields failing in circumstances similar to the accident at issue in this case. Mr. Graham further notified Scott Millhouse, Subaru district service manager, that he had been made aware of several instances of bug shields failing in like circumstances. Mr. Millhouse indicated to Mr. Graham that Mr. Graham's observations concerning the failure of the bug shields "were not unique," and indicated that it was not the first time that he had heard of bug shield failures. The issue of bug shield failures was discussed in a Subaru factory publication called <u>Tech Talk</u>. The discussion in <u>Tech Talk</u> centered around the clips used to fasten the bug shields to the vehicles and how the deflectors were attached to the vehicles. To Mr. Graham's knowledge, the bug shield itself was never redesigned.

---

[3] See Deposition of Kenneth Graham.

[4] See Deposition of Kenneth Graham.

According to the defendant's service department notes, the Nordby's bug shield was installed after-factory by the defendant using a Subaru installation kit. The bug shield was considered by the defendant to be standard equipment for that type of vehicle. The defendant never contacted the Nordby's or other customers who had purchased vehicles with bug shields like the Nordby's to have the bug shields replaced even though the defendant had an updated installation kit for the bug shields and would on occasion replace some customers bug shields with that installation kit upon failure of the bug shield. The defendant has not observed any problems with bug shields that were installed utilizing the updated installation kit.

The plaintiffs are suing the defendant under the theory of negligence, alleging in relevant part that:

> The Defendant Jim Miller Nissan-Subaru was negligent in each and all of the following particulars:
> (a) Failing to adequately inspect the bug shield/deflector prior to vehicle delivery;
> (b) Failure to properly install/affix the bug shield/deflector on the Nordby vehicle; and
> (c) Failure to use reasonable care.

The plaintiffs further allege that as a result of the defendant's negligence, Plaintiff Katharine Wilkinson "suffered injuries, including, but not limited to, her head, brain, memory, personality, neck, arms, face and other parts of her body . . . has in the past and will in the future [suffer] mental and physical pain and anguish, inability to lead a normal life, loss of enjoyment of life, disability," and loss of function of mind and body. The plaintiffs also claim that as a result of the defendant's negligence, Plaintiff Brian Wilkinson suffered a loss of the spousal consortium of his wife, Plaintiff Katharine Wilkinson.

# CONCLUSIONS OF LAW

## Summary Judgment Standard

A motion for summary judgment may be granted only if, after examining all of the evidence in the light most favorable to the nonmoving party, the court finds that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. Kegel v. Runnels, 793 F.2d 924, 926 (8th Cir. 1986). Once the movant has properly supported its motion, the nonmovant "may not rest upon the mere allegations or denials of [its] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "To preclude the entry of summary judgment, the nonmovant must show that, on an element essential to [its] case and on which it will bear the burden of proof at trial, there are genuine issues of material fact." Noll v. Petrovsky, 828 F.2d 461, 462 (8th Cir. 1987) (citing Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). Although "direct proof is not required to create a jury question, . . . to avoid summary judgment, 'the facts and circumstances relied upon must attain the dignity of substantial evidence and must not be such as merely to create a suspicion.'" Metge v. Baehler, 762 F.2d 621, 625 (8th Cir. 1985) (quoting Impro Prod., Inc. v. Herrick, 715 F.2d 1267, 1272 (8th Cir. 1983)). The nonmoving party is entitled to all reasonable inferences that can be drawn from the evidence without resort to speculation. Sprenger v. Fed. Home Loan Bank of Des Moines, 253 F.3d 1106, 1110 (8th Cir. 2001). The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient; there must be evidence on which the jury could reasonably find for the non-moving party. Id.

## The Defendant's Motion for Summary Judgment

The defendant moves for summary judgment, asserting that "there are no facts in the record to support any claims of negligence." Specifically, the defendant contends:

> Discovery is now closed in this case and there is simply no evidence in the record to support any of [the plaintiffs'] claims. Plaintiffs have failed to designate any expert who will

>             testify [that the defendant] was negligent in any way or that
>             any negligence of [the defendant] caused the accident. No
>             investigation of the accident was done by [the plaintiffs]. . . .
>             [T]he only evidence ever presented on these issues strongly
>             indicates the shield may have been loosened after an oil change
>             or service call in Wyoming. Plaintiffs have established at most
>             that [the defendant] installed the bug shield. Plaintiffs have
>             entirely failed to solicit or present evidence the installation was
>             negligent in any way. . . . The bug shield could have been
>             defective, vandalized, broken accidentally at the service
>             station, or otherwise damaged which caused it to break
>             off. . . . There is no evidence of any breach of any legal duty
>             or obligation by [the defendant]. . . . Even if proof of a
>             breach of some sort is assumed, there is still no evidence of
>             causation.

The defendant asserts that because the plaintiffs have failed to establish a genuine issue of material fact concerning whether the defendant was negligent in installing or inspecting the Nordby's bug shield or that the defendant owed a duty to warn to the plaintiffs, summary judgment should be granted.

The plaintiffs resist, arguing that the testimony of Mr. Graham creates a genuine issue of material fact as to "whether the [d]efendant's practices in regard to the installation, inspection and replacement policies of the bug shield on the Nordby's vehicle was a proximate cause of the motor vehicle accident and [p]laintiff[s'] injuries." The plaintiffs further argue that "[i]n addition, [p]laintiff[s'] failure to designate an expert witness is not sufficient grounds for granting summary judgment, nor is the failure of the [p]laintiffs to personally conduct an investigation of the accident, especially in light of the injuries sustained by Katharine Wilkinson in the accident." The plaintiffs contend that, "[i]t is clear why the bug shield came off; the installation procedures used at the time created a known risk that the bug shield could break off in certain circumstances, such as passing a semi or two on a highway." Finally, the plaintiffs argue that "there is evidence [in light of Mr. Graham's testimony] suggesting strongly . . . that the problems with the bug shield were not the result of the oil change in Wyoming as alleged by the defendant . . . but

6

rather a result of [the defendant's] failure to properly inspect, warn, install and use reasonable care in regard to the shield."

The court finds that the plaintiffs have failed to establish a genuine issue of material fact concerning whether the defendant was negligent in installing or inspecting the Nordby's bug shield, or whether the defendant failed to use reasonable care in warning customers, such as the Nordby's, as to any "known risks associated with the [bug] shield or to utilize the improved installation kit."[5] First, in regard to the plaintiffs' claim of negligent installation and inspection of the bug shield, the court finds that the evidence of record does not generate a fact issue. Specifically, the plaintiffs' evidence fails to indicate that the actual installation of the bug shield, or inspection of it prior to vehicle delivery, was negligent. The plaintiffs have not set forth any evidence which would indicate that the service persons who installed the bug shield onto the Nordby vehicle did so in a negligent fashion or that the manner of the installation, utilizing the installation kit, caused the bug shield to fail. Rather, the plaintiffs' evidence appears to concern whether the installation kits or bug shields themselves are defective.

Second, the court finds that the plaintiffs have failed to establish a genuine issue of material fact in support of the claim that the defendant failed to use reasonable care in warning customers that they had received reports of bug shields breaking or coming loose and in failing to advise customers to have their bug shields reinstalled with the updated installation kit. In a case similar to the instant matter, the Iowa Court of Appeals held that no such duty exists absent some special relationship between the provider of a product and a plaintiff who was a third party injured by that product. See <u>Johnson v. Harley-Davidson Motor Company Group, Inc.</u>, 680 N.W.2d 378, 2004 WL 370251 (Iowa Ct. App. 2004) (unpublished).[6] In <u>Harley-Davidson</u>, the plaintiffs sued the motorcycle manufacturer,

---

[5] See Plaintiffs' Resistance to the Defendant's Motion for Summary Judgment.

[6] <u>See also</u> <u>Ries v. Steffensmeier</u>, 570 N.W.2d 111, 114 (Iowa 1997). In <u>Ries</u>, the
(continued…)

7

motorcycle dealer, and others under products liability theories for injuries sustained in a motorcycle accident. The plaintiffs alleged that the consignment-dealer of the motorcycle had a duty to warn them of risks involved in towing a trailer. The Iowa Court of Appeals affirmed the district court's finding that Cycle Center, the motorcycle consignment-dealer, was not a "seller" for purposes of a duty to warn the plaintiffs under § 388 of the Restatement (Second) of Torts. The court further noted that the district court properly found that no duty existed under general tort principles, as "[t]he principles relating to a failure to take action to protect from harm [were equally applicable] to the plaintiffs' claim that Cycle Center failed to warn them,"[7] and "[a]bsent some special relationship with the plaintiffs, Cycle Center had no duty to take action to protect [the plaintiffs] from harm." In affirming the district court's ruling, the Iowa Court of Appeals held that "[b]ecause the [district] court found no basis for Cycle Center owing the plaintiffs a duty, either under general tort principles or under Section 388 of the Restatement (Second) of Torts, there can be no breach of duty."

The court finds that here, as in Harley-Davidson, the plaintiffs have failed to establish that the defendant had a duty to warn the plaintiffs. First, the plaintiffs have failed to establish a genuine issue of material fact that a special relationship existed between the defendant, the installer of the bug shield, the failure of which caused Plaintiff

---

[6](…continued)
plaintiff sued farmers after he was injured by the farmers' skid loader while he was helping with farm chores. The Iowa Supreme Court held that the farmers had no duty to warn the plaintiff because the plaintiff failed to establish the existence of a special relationship giving rise to such a duty. See Ries, supra, at 114. The Ries court reasoned that because the plaintiff did not establish an employment relationship and "did not offer any proof of-- nor did the court instruct upon--any other special relationship giving rise to a duty such that damages could be recovered for its breach," the plaintiff's case failed. The court noted, "there must be a duty to warn before the law will recognize a failure to warn." Id.

[7] Harley-Davidson, supra, at **9 (citing Garofalo v. Lamda Chi Alpha Fraternity, 616 N.W.2d 647 (Iowa 2000)).

Brian Wilkinson to swerve, and the plaintiffs. Second, even assuming that the plaintiffs had established that Section 388 of the Restatement (Second) is here applicable because the defendant was the seller of the vehicle and bug shield, the plaintiffs' claim of failure to use reasonable care in warning the Nordby's or the plaintiffs still must fail. Section 388 of the Restatement (Second) of Torts states, in relevant part, as follows:

> One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner and by a person for whose use it is supplied if the supplier
> (a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and
> (b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and
> (c) fails to exercise reasonable care to inform them of its dangerous condition or the facts which make it likely to be dangerous.
> Persons included as "suppliers"; . . . sellers . . .

Restatement (Second) of Torts § 388 (2004).

The plaintiffs have failed to establish a genuine issue of material fact concerning prong (a) of § 388: whether the defendant knew or had reason to know, during the relevant time period,[8] that the bug shield was or was likely to be dangerous for the use for which it had been supplied. There is simply no evidence that the defendant knew or should have known of any hazard to third persons at the time that it installed the Nordby bug shield. Mr. Graham became aware of other bug shield failures at some point, but the record does not establish when that was in relation to the installation of the Nordby bug shield. The record does not reveal whether these instances represented problems with a low or high

---

[8] The relevant time period being the between the time that Mr. Graham was first notified by a customer that the bug shield was breaking off and the time of the installation of the Nordby's bug shield.

9

percentage of the total number of bug shields installed. Further, there is no evidence of any injuries associated with these undated other bug shield failures.

Upon the foregoing,

IT IS ORDERED

The defendant's motion for summary judgment is granted. This matter is dismissed. The Clerk of Court shall enter judgment for the defendant.

May 20, 2005.

_____
JOHN A. JARVEY
Magistrate Judge
UNITED STATES DISTRICT COURT